UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSSISSIPPI

STEPHEN PAUL SMITH
And JESSICA NICHOLE SMITH                                        APPELLANTS

vs.                                                              CIVIL ACTION NO. 3:18cv111

MID-SOUTH MAINTENANCE, INC., et al                               APPELLEES

# ORDER

This is an appeal from a March 22, 2018 final judgment entered by U.S. Bankruptcy Judge Jason Woodard against appellants Stephen Paul Smith and Jessica Nichole Smith in the amount of $98,942.00. Judge Woodard reached his ruling after conducting a three-day trial on November 29, 30, and December 1, 2017. In a thirty-five page order explaining his ruling, Judge Woodard found appellants' debts to be nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6), based on a conclusion that they had knowingly received funds which were embezzled by Kimberly Cray Burk from appellee Mid-South Maintenance, Inc. It is undisputed that Kimberly, who is Jessica's mother and Stephen's mother-in-law, has a lengthy history of embezzlement, and she is presently serving her third incarceration for this offense. In their appeal, Stephen and Jessica take issue with a number of procedural and substantive rulings by Judge Woodard, but, for the reasons discussed below, this court concludes that these objections are not well taken and that Judge Woodard's ruling is due to be affirmed.

## STANDARD OF REVIEW

On appeal, a bankruptcy court's findings of fact are reviewed for clear error, and issues of law are reviewed *de novo*. *UTSA Apts. L.L.C. v. UTSA Apts. 8, L.L.C.,* 886 F.3d 473, 485 (5th Cir. 2018). A bankruptcy court's factual finding is "clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been

1

committed." *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (*quoting Hibernia Nat'l Bank v. Perez*, 954 F.2d 1026, 1027 (5th Cir. 1992)). In reviewing factual findings, this court "must give due regard . . . to the opportunity of the [bankruptcy] court to judge the credibility of the witnesses." *Hibernia*, 954 F.2d at 1027 (quoting Fed. R. Civ. P. 52(a)) (alteration in original).

### I. DID THE BANKRUPTCY COURT ERR AS A MATTER OF LAW BY DENYING APPELLEES' MOTION TO DISMISS UNTIMELY FILED COMPLAINT?

This court considers first what it regards as the primary issue in this appeal, namely whether Judge Woodard erred in finding that a June 1, 2017 Agreed Order which extended the time for appellees to file an objection to "discharge" should also be read as extending the time for them to file an objection to "dischargeability" of the debts at issue in this case. In objecting to Judge Woodard's ruling, appellants emphasize that the terms "discharge" and "dischargeability" are distinct ones in the Bankruptcy Code. As noted by the Ninth Circuit:

> Discharge and dischargeability "refer to distinct concepts and cannot be used interchangeably" because they "are based on separate policies and are governed by distinct procedural rules." *In re Billings*, 146 B.R. 431, 435 (Bankr. N.D. Ill. 1992). Denial of discharge under 11 U.S.C. § 727 is a remedy that "punishes debtors for misconduct *in the bankruptcy process.*" *Latman v. Burdette*, 366 F.3d 774, 782 (9th Cir. 2004) (emphasis added) (citing 11 U.S.C. § 727(a)). . . . In contrast, the rationale for § 523(c)—which allows a creditor to have a specific debt declared nondischargeable—"is that the debtor acted in an improper manner at the time [that] he or she incurred the specific debt." *Billings,* 146 B.R. at 434.

*Willms v. Sanderson*, 723 F.3d 1094, 1101 (9th Cir. 2013).

The meaning of these two terms is of considerable importance in this case, since it seems clear that, if the deadline for filing objections to dischargeability under 523(c) was not extended, then appellees failed to object in a timely manner to the dischargeability of appellants' debts. Judge Woodard ultimately found that Stephen and Jessica's debts were non-dischargeable, and

2

any conclusion that appellee's objections to dischargeability were untimely might well serve to cast doubt upon the legal basis for that ruling.

In considering these issues, this court first notes that this appellate issue involves a mixed question of fact and law since, in making his ruling, Judge Woodard relied both upon his factual findings and, implicitly, upon a legal interpretation of his authority to take action based upon those findings. Judge Woodard's December 14, 2016 order reads in relevant part:

> On June 7, 2016, the Court held a telephonic status conference in these cases. Jeff Collier appeared on behalf of the chapter 13 trustee, Hugh Armistead appeared on behalf of the plaintiffs, and Robert Cornelius appeared on behalf of each of the defendants. At the telephonic hearing, the parties understood that the plaintiffs were
> going to be filing a [sic] adversary proceedings regarding their objections to discharge or dischargeability against all of the debtors. The plaintiffs claims against the defendants in these three adversary proceedings are based on the defendants' alleged involvement in the same fraudulent scheme, and thus all negotiations regarding and the timeline for filing complaints were consolidated into a single discussion at the telephonic hearing. Based on the agreement of the parties, on July 7, 2016, the Court entered a consent order extending deadlines in the case (Jones Bankr. Dkt. #34). The consent order provided that the plaintiffs had 45 days from the entry of that order within which to "commence its adversary proceeding." In the Burk and Smith cases, the parties also agreed to extend the time to "object to the discharge of the Debtor" until August 22, 2016 (Burk Bankr. Dkt. #26; Smith Bankr. Dkt. #27). It is clear to the Court that the parties to these agreed orders intended that the orders extend the deadline for complaints objecting either to the debtor's general discharge under 11 U.S.C. § 727 or to the dischargeability of the individual debts owed to the plaintiffs under 11 U.S.C. § 523. In addition, the Court also intended these orders to extend the deadline to file complaints objecting to the debtors' discharge -- either the general discharge under §727 and/or the dischargeability of certain debts under §523. The plaintiffs filed the Complaints in the adversary proceedings on August 22, 2016, making the complaints timely filed. (citations omitted) Accordingly, the Motion to Dismiss Complaint are due to be denied as to the statute of limitations issue. (emph. added)

[Slip op. at 3].

Judge Woodard thus based his ruling largely upon his findings of the parties' intent, as expressed in the June 7 telephonic hearing, and it seems clear that these factual findings are

3

subject to a "clearly erroneous" standard of review.  In arguing that Judge Woodard erred in this regard, appellants write in their reply brief that:

> On page seven of their brief, appellees rely on an interlocutory order entered by the bankruptcy court on December 14, 2016, referring to a telephonic hearing conducted on June 7, 2016. The bankruptcy court states in the interlocutory order that the parties and the court intended for the deadlines to be extended for complaints objecting either to the debtors' general discharge under 11 U.S.C. § 727 or to the dischargeability of the individual debts owed to plaintiffs under 11 U.S.C. § 523. However, the case docket sheet is devoid of any mention of the telephonic hearing, no record appears to have been made and no order was subsequently entered altering the terms of the agreed order entered on June 1, 2016. Furthermore, the telephonic hearing on June 7, 2016, was six days after the agreed order was entered on June 1, 2016, and the bankruptcy court could not have possibly known the intentions of the parties when the first agreed order was entered.

[Reply brief at 5-6].

In the court's view, this argument falls well short of casting doubt upon Judge Woodard's finding that the parties intended to extend the deadlines to object to both "dischargeability" and "discharge."  In so stating, the court initially observes that appellants' argument has a somewhat disingenuous quality to it, since it appears to cast doubt upon matters which, they later concede, actually occurred.  Indeed, in one sentence of their argument, appellants appear to question whether the June 7, 2016 telephonic hearing with Judge Woodard actually took place, noting that the docket contains no reference to it.  In their next sentence, however, appellants flatly assert that "the telephonic hearing on June 7, 2016, was six days after the agreed order was entered on June 1, 2016." [*Id.*]  Certainly, appellants are in a position to know whether the phone conference with Judge Woodard actually took place, and since they seem to acknowledge that it did, this court does not believe that the docket's silence regarding this event is of any particular significance.

In a similar vein, this court notes that appellants have submitted no evidence contesting Judge Woodard's finding that the parties led him to believe that they intended to extend the

4

deadlines for filing objections to both dischargeability and discharge. The closest appellants come to doing so is when they write that "the bankruptcy court could not have possibly known [at the June 7 hearing] the intentions of the parties when the first agreed order was entered" six days previously. This court disagrees. In the court's view, if the statements of counsel at the June 7 hearing led Judge Woodard to believe that their intent was to extend the deadlines to object to both dischargeability and discharge, then it is entirely logical to assume that they had the same intent six days previously. Certainly, appellants provide this court with no proof (or even arguments) suggesting that any events had taken place in the intervening six days which might have altered their intent *vis a vis* the extension of relevant deadlines.

In light of the foregoing, this court has little difficulty in concluding that Judge Woodard's factual finding that the parties' intent was to extend the deadlines for objecting to both dischargeability and discharge was not clearly erroneous. Having so found, this court next considers whether Judge Woodard erred in, at least implicitly, finding that he had the legal authority to enforce what he found to be the parties' intent in executing the Agreed Order, rather than relying on a strict reading of its actual terms. This issue of law is to be resolved on a *de novo* basis, but this court has no reason to question Judge Woodard's ruling even under this standard. This court is, by inclination, opposed to "gotcha" litigation in its various forms, and, if it believed, as Judge Woodard did, that the parties had intended to extend the deadlines to object to both dischargeability and discharge, then it would almost certainly have made the same ruling as he did.

In considering Judge Woodard's interpretation of his legal authority in this context, this court believes that a common-sensical review of the context for his ruling is helpful. There is a rather subtle legal distinction between the terms "dischargeability" and "discharge," and the

5

words themselves are, obviously, quite similar. True enough, these are terms with distinct meanings in the Bankruptcy Code, but that does not mean that the parties did not subjectively *intend* for the term "discharge" to serve as a shorthand for both terms.

In their brief, appellees argue, with considerable force, that appellants' contention that they did not intend to extend the deadlines for objecting to "dischargeability" is less than genuine:

> That is a distinction without a difference in this case. For notice purposes, what could the Defendants have believed was the purpose for the Plaintiffs' objections to the bankruptcy if the objection was not to the dischargeability of the debt owed? The Plaintiffs' status as creditors in the Defendants' bankruptcy was not a mystery. The Plaintiffs had filed a state court fraud, conversion, etc., action in Oklahoma against the Smiths. The Plaintiffs filed the bankruptcy action in Mississippi to discharge the debt noted in the Oklahoma lawsuit. The Plaintiffs were the only creditors whose debts were of any significance. The Appellants can't claim with a straight face they did not know or understand from the bankruptcy court pleadings what the Plaintiffs were objecting to. Any argument of a substantive difference in the Plaintiffs' objecting to the Defendants discharge, but not specifically objecting to the dischargeability of their debts, is pure sophistry.

[Appellee's brief at 12]. This court agrees that there appears to be a disingenuous quality to appellants' arguments in this case. In so stating, this court notes that appellants themselves have raised a point of error asserting that the "bankruptcy court erred in denying [them] a Chapter 7 discharge." It thus appears that all parties to this appeal have, at one time or another, used the term "discharge" as a blanket term for the issues at stake in the adversary proceeding below.

Clearly, Judge Woodward's evaluation of the parties' intent would be harder to justify if he was dealing with two terms with very different meanings, but that is plainly not the case. Moreover, there was a potential for serious injustice if Judge Woodard were to allow what he found to be the parties' intent to be overridden by a more technical reading of the Agreed Order. In so stating, this court notes that Judge Woodard was dealing with issues relating to the dischargeability of bankruptcy debts which arose from a large embezzlement from which, he

6

eventually found, appellants knowingly benefitted. Given the importance of the issues at stake, there was clearly a potential for a serious injustice if appellants had managed to avoid having the merits of the claims against them considered based upon an overly technical reading of the Agreed Order.

With the foregoing considerations in mind, this court believes that, properly framed, the issue of law in this present context is whether Judge Woodard had the inherent authority as a U.S. Bankruptcy Judge to make a reasonable interpretation of the Agreed Order based on what he found to be the parties' actual intent, in order to prevent what would otherwise be a manifest injustice. This court believes that this question essentially answers itself, and it would be surprised if a U.S. Bankruptcy Judge were held to lack the authority to make such a ruling. Appellants have certainly presented this court with no authority suggesting that Judge Woodard lacked such authority, and the authorities upon which they do rely are clearly distinguishable. Appellants' primary authority is *Kontrick v. Ryan*, in which the U.S. Supreme Court held that a debtor forfeits the right to rely on the time limit for a creditor to file an objection to discharge if he fails to raise the issue before the bankruptcy court reaches the merits of the creditor's objection. 540 U.S. 443, 445 (2004). Clearly, however, *Kontrick* does not address the issue in this case, which is whether Judge Woodard had the legal authority to conclude, based upon the representations of counsel at a hearing, that the June 1 order extending time to object to "discharge" was also intended to encompass the deadline for objecting to dischargeability.

This court notes that, in their brief, appellees rely upon the very same *Kontrick* decision, specifically the portion of the opinion which refers to the relevant Bankruptcy Code time limitations as "non-jurisdictional." Specifically, appellees write in their brief that:

> *Kontrick* specifically rejected a claim that an extension of time for cause pursuant to Fed. Rule Bkrtcy. Proc. 4004 is jurisdictional. At 540 U.S. 447, the Court held, "We agree

7

that Rule 4004 is not 'jurisdictional.'" The Court further noted that, "Only Congress may determine a lower federal court's subject matter jurisdiction," that Congress authorized bankruptcy court to adjudicate, inter alia, objections to discharge," and that, "The provision conferring jurisdiction over objections to discharge, however, contains no timeliness condition." Id, at p. 552. The Court ultimately concluded that the Bankruptcy procedure rules for objections are not jurisdictional. "In short, the filing deadlines prescribed in Bankruptcy Rules 4004 and 9006(b)(3) are claim-processing rules that do not delineate what cases bankruptcy courts are competent to adjudicate." Id., at p. 454.

[Brief at 8-9].

While this court agrees with appellees' reading of *Kontrick*, it is not clear that it need even reach the question of whether Rule 4004 is jurisdictional or not. In so stating, this court reiterates that Judge Woodard found as follows in his ruling:

> It is clear to the Court that the parties to these agreed orders intended that the orders extend the deadline for complaints objecting either to the debtor's general discharge under 11 U.S.C. § 727 or to the dischargeability of the individual debts owed to the plaintiffs under 11 U.S.C. § 523. In addition, the Court also intended these orders to extend the deadline to file complaints objecting to the debtors' discharge -- either the general discharge under §727 and/or the dischargeability of certain debts under §523.

[Id.]. It thus seems clear to this court that Judge Woodard found, in reading the parties' Agreed Order in light of their actual intent (and his own), that there was no non-compliance with relevant deadlines at all, so as to raise the question of whether Rule 4004 is jurisdictional or not. Assuming that this court's conclusion in this regard is erroneous, then it would still agree with appellees that, in light of *Kontrick*, Judge Woodard had the authority to excuse any non-compliance with the relevant deadlines, since they are non-jurisdictional. Either way, this court concludes that Judge Woodard's ruling on the timeliness issue is due to be affirmed, and this court will turn to the next point of error.

**II. SUBSTANTIVE CHALLENGES TO JUDGE WOODARD'S DENIAL OF A DISCHARGE TO APPELLANTS.**

8

Having addressed the issue of the timeliness of appellee's objections, this court will next address appellants' challenge to the substance of Judge Woodard's ruling denying discharge. In their brief, appellants list as separate points of error the following challenges to Judge Woodard's rulings:

- THE BANKRUPTCY COURT ERRED IN DENYING APPELLANTS A CHAPTER 7 DISCHARGE BASED ON THE EVIDENCE PRESENTED
- THE BANKRUPTCY COURT ERRED BY FAILING TO GIVE ANY EVIDENTIARY WEIGHT TO THE UNCONTRADICTED TESTIMONY AND ADMISSIONS OF THE WITNESSES FOR DEFENDANTS
- THE BANKRUPTCY COURT ERRED BY HOLDING APPELLANTS TO A HIGHER STANDARD THAN THE REPRESENTATIVE OF APPELLEE
-THE BANKRUPTCY COURT ERRED BY HOLDING APPELLANTS TO A DIFFERENT STANDARD THAN ZACHARY ALAN BURK

This court will consider these arguments together, since they each relate to the substantive merits of Judge Woodard's ruling finding appellants' debts to be non-dischargeable.

In seeking to overturn Judge Woodard's order denying discharge, appellants face a quite difficult challenge. As discussed previously, a "clearly erroneous" standard of review applies to Judge Woodard's findings of fact, which he only made after personally viewing the testimony of numerous witnesses. This court, by contrast, is limited to a written record on appeal, and it has not had the same opportunity that Judge Woodard did to gauge the credibility of witnesses. Moreover, Judge Woodard carefully set forth his reasons for denying discharge in a lengthy order which he issued on March 22, 2018. Finally, Judge Woodard has far greater experience than this court in determining the circumstances under which misconduct by debtors is (and is not) sufficiently severe to deny them a discharge in bankruptcy. Under these circumstances, this court believes that a great deal of deference to Judge Woodard's ruling is appropriate.

Deferential standard of review aside, this court would find Judge Woodard's written reasons for ruling as he did to be quite clear and persuasive, even under a *de novo* review. In so

stating, this court notes that Judge Woodard's order directly or indirectly addressed most, if not all, of the objections raised by appellants in their brief. For example, appellants question why Judge Woodard reached a different result as to their younger brother Zachary, but he carefully explained his reasons for doing so in his ruling. Specifically, Judge Woodard found that "Zachary did not know or have reason to know of his mother's scheme" and that "[b]ecause he did not know that he was spending embezzled funds, he did not have the subjective intent to cause Mid-South harm" as appellants did. [Slip op. at 32].

In reaching this conclusion, Judge Woodard relied heavily upon his evaluation of the relative credibility of Zachary and appellants. As to Zachary, Judge Woodard wrote that:

> Zachary was completely unaware that he was spending embezzled money. He believed that he was spending money that his mother legitimately earned. Zachary had no reason to believe that he was involved in a scheme, and thus had no intent to deceive. . . . Zachary did spend freely, but he had always been able to spend whatever he wanted and his mother would manage his account balance. Most adults would have realized that Zachary was spending more than his mother was making, but he did not. While his actions may have been negligent, they do not amount to the level of willful blindness necessary to establish wrongful intent. Thus, Zachary did not have the intent required to commit actual fraud.

[Slip op. at 20-21]. These factual findings by Judge Woodard may only be overturned if this court were to find them "clearly erroneous," and appellants have not even come close to establishing that this is the case.

It appears to this court that, in their briefing, appellants are more eager to question Judge Woodard's leniency as to Zachary than they are to address his findings that they themselves were aware of their mother's scheme. At the end of the day, appellants, and not Zachary, are the ones seeking to overturn Judge Woodard's ruling, and he clearly found that they were aware of, and knowingly benefitted from, Kimberly's embezzlement from MidSouth. For example, Judge Woodard wrote that:

> Jessica and Stephen's debt to Mid-South is nondischargeable under the actual fraud portion of § 523(a)(2)(A). This Court finds and concludes that the they knew of Kimberly's scheme. Their spending money that they knew was embezzled demonstrates their intent to deceive. By knowingly receiving stolen funds and then spending that money, Jessica and Stephen committed actual fraud. At a minimum, they recklessly disregarded the truth. Jessica and Stephen knew of Kimberly's past. They were suspicious of Kimberly's activities and the money that was being deposited into their accounts, but they did not fully investigate the source of the funds. They chose not to do so in order to ensure that they had no "knowledge" and would be able to continue spending in excess. Therefore, even if they had no actual knowledge, Jessica and Stephen's willful blindness satisfies the intent element.

[Slip op. at 21-22].

In reaching these conclusions, Judge Woodard relied largely upon his finding that appellants' testimony was simply not credible. Specifically, Judge Woodard wrote that:

> Jessica and Stephen testified that they had no idea of Kimberly's scheme or that they were spending embezzled funds. The Court does not find this testimony credible. Even after withdrawing cash for Kimberly, Jessica and Stephen knew that a lot of money was going through their accounts and that they were receiving, and ultimately spending, a large amount of money that they did not earn. This raised their suspicions and they both questioned the source of the money in their accounts. When rebuffed by Kimberly, they did not force the issue because they were more concerned with spending the funds than ensuring their legitimacy.

[Slip op. at 13].

In the court's view, Judge Woodard's assessment of the parties' credibility clearly explains why Zachary was granted a discharge which appellants were denied, and they have given this court no basis to overturn this assessment. In attempting to do so, appellants write in their brief that:

> Mr. Smith testified that she (Kimberly Burk) opened a bank account for him when he was 17 because he could not open his own account. Mr. Smith dropped out of high school in the 10th grade and went to work. Mr. Smith testified like Ms. Smith that he did not look at bank statements. He also testified that he can barely read a bank statement now. The findings of the bankruptcy court on page 34 that a reasonable person, knowing what [appellants] did, would be acting with substantial certainty that they were spending ill-gotten gains are just not supported by the facts and testimony. The testimony of appellants clearly shows that they were young and inexperienced in financial matters. Ms. Smith testified that her mother bought her a brand new car and was paying for it. Her

11

testimony also reveals that her mother was the source of her money, that she obeyed her mother and requested permission to spend money including using a debit card. Ms. Smith further testified that she did not ever know how much money was in her account because her mother took care of all of that.

[Appellants' brief at 16-17 (record citations omitted)].

This argument is typical of appellants' briefing as a whole, which relies heavily upon their own self-serving testimony, which Judge Woodard found to be non-credible for reasons which he fully explained in his ruling. As Judge Woodard wrote in his ruling:

> The defendants in each adversary proceeding told basically the same story: although tens of thousands of embezzled dollars went through their accounts, none of the defendants had any knowledge that they were spending embezzled funds because they never looked at their bank statements, which went to Kimberly. All of the defendants claim that Kimberly perpetrated this embezzlement without their knowledge, even though the defendants, not Kimberly, spent the majority of the money, which greatly exceeded their own personal incomes.

[slip op. at 3].

In the court's view, there is a basic implausibility to appellants' story in this case, and this court finds it quite unsurprising that Judge Woodard did not regard it as credible. In their brief, appellants emphasize that Kimberly admitted "to the embezzlement and testified there was no way that her kids could have known" about it, [brief at 19] but this court regards a mother's attempt to protect her children as entirely unsurprising. Judge Woodard noted that Kimberly "is a persistent criminal" who is "currently serving her third prison term for embezzlement," [slip op. at 4], and this is clearly not a personal history which lends itself to a finding of credibility.

In their brief, appellants also rely upon a damaging admission made by MidSouth owner Dennis Jones, in which he conceded on cross-examination that he himself did not look at his bank statements. [Appellants brief at 21]. While it appears that appellants did score some minor points in getting Jones to admit that he is guilty of the same practice for which he faults them, this testimony does not come close to establishing that Judge Woodard's findings as to

appellants' state of mind was clearly erroneous. Obviously, it is appellants, and not Jones, who are appealing Judge Woodard's ruling, and it is their conduct which is at issue in this case. At the end of the day, the fact that Jones may have been less than diligent in discovering the embezzlement in this case by no means serves to exonerate appellants for what Judge Woodard found to be their acts of knowingly expending embezzled funds. Considering the record as a whole, this court believes that it provides very strong support for Judge Woodard's ruling denying appellants a discharge in bankruptcy, and appellants' substantive objections to that ruling will therefore be denied.[1]

It is therefore ordered that appellants' objections to Judge Woodard's ruling are overruled, and his ruling denying appellants a discharge will be affirmed in its entirety. This case is now closed.

SO ORDERED, this the 25th day of March, 2019.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

---

[1] In their brief, appellants also object to the manner in which Judge Woodard organized the trial, namely by choosing to sequester the party defendants and by failing to grant a continuance so that Kimberly Burk could be released from prison and testify in person. Notably, however, appellants cite no authority whatsoever in support of their arguments, and, in their reply brief, they do not even attempt to rebut appellee's arguments that these trial decisions were well within Judge Woodard's discretion. This court therefore does not regard these points of error as being adequately briefed, and it will deny appellants' motion to set aside Judge Woodard's ruling on these bases, for essentially the reasons stated in appellee's brief.